```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| CHRISTOPHER SCHOLL,<br><br>                    Plaintiff,<br><br>-against-<br><br>COMPASS GROUP USA, INC. and<br>EUREST SERVICES, INC.,<br><br>                    Defendants. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED:  7/13/2022<br><br>19-cv-6685 (MKV)<br><br>OPINION & ORDER GRANTING<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT |

MARY KAY VYSKOCIL, United States District Judge:

Before the Court is Defendants' motion for partial summary judgment [ECF No. 58]. For the reasons set forth below, the motion is GRANTED.

### I.  BACKGROUND[1]

Plaintiff Christopher Scholl is a certified medical marijuana patient under the New York State Medical Marijuana Program. *See* Def. 56.1 ¶¶ 1–3; Pl. 56.1 ¶¶ 1–3. Defendant Compass Group USA, Inc. owns Defendant Eurest Services, Inc. ("Eurest"), which provides food and facilities services to corporate offices. *See* Def. 56.1 ¶¶ 6, 7; Pl. 56.1 ¶¶ 6, 7 [ECF Nos. 1 ¶¶ 12–14; 10]. While Scholl was employed elsewhere, Scholl met Ralph Tafuri, who was employed by Eurest as a manager. Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5. Scholl expressed interest in working for Eurest and told Tafuri that he had a medical marijuana certificate. *See* Def. 56.1 ¶¶ 16, 17; Pl. 56.1 ¶¶ 16, 17. According to Scholl, Tafuri said "he [didn't] care" but "the company was more conservative." Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16; Scholl Dep. 200:8–18. Scholl later applied for a position at Eurest. Def. 56.1 ¶ 6; Pl. 56.1 ¶ 6. He received an offer of employment contingent upon his passing a drug

---

[1] The facts are based on the evidence cited in the parties' Local Civil Rule 56.1 statements [ECF Nos. 60 ("Def. 56.1"), 61, 62, 64 ("Pl. 56.1"), 68, 69].

test.  Def. 56.1 ¶¶ 10, 11; *see* Pl. 56.1 ¶¶ 10, 11; Cmpl. ¶ 21.  Scholl failed the drug test, and he was not hired.  Def. 56.1 ¶¶ 12, 14; Pl. 56.1 ¶ 12; *see* Pl. 56.1 ¶ 14.

Scholl filed a complaint in which he alleges that Defendants violated New York State and New York City law by denying him employment because he was a certified medical marijuana user [ECF No. 1 ("Cmpl.")].  Specifically, as relevant here, the complaint first asserts a claim for disability discrimination under the New York State Human Rights Law, New York Executive Law §§ 296, *et seq.* ("NYSHRL").  Cmpl. ¶¶ 42–44.  The complaint asserts a second claim under the New York City Human Rights Law, New York City Administrative Code §§ 8-502(a), *et seq.* ("NYCHRL").  Cmpl. ¶¶ 45–47.  Plaintiff alleges that Defendants violated the NYCHRL "by discriminating against Plaintiff because of his disability, denying him employment, and refusing to provide Plaintiff with a reasonable accommodation for his disability (certified medical marijuana patient)."  Cmpl. ¶ 47.

Defendants answered, and the parties have completed discovery.  Defendants now move for partial summary judgment [ECF Nos. 58–61].  Defendants seek judgment only with respect to Scholl's second claim, alleging disability discrimination in violation of the NYCHRL.  Scholl opposes the motion for partial summary judgment [ECF No. 65].  On June 3, 2022, the Court held oral argument on the motion [ECF No. 86-1 ("Tr.")].

## II.   LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court must grant a motion for summary judgment if the movant shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).

### III.  DISCUSSION

Defendants seek summary judgment on Plaintiff's claim under the New York City Human Rights Law.  They contend that while New York State law recognizes a person's status as a certified medical marijuana patient as a basis for a claim of disability discrimination, the New York City Human Rights Law does not.  Def. Mem. at 6–9.  Defendants argue that while the State expanded the definition of disability to include anyone who has a medical marijuana certification, the City chose not to do the same, and "there is no provision in the City Code that recognizes a certified medical marijuana user as 'per se' disabled under the local law."  Def. Mem. at 7.

Defendants are correct.  This Court is "bound" to "apply the law as interpreted by New York's intermediate appellate court[,]" unless there is strong reason to believe the New York Court of Appeals, which has not ruled on the issue, would reach a different conclusion.  *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999).  Last year, in a similar case on which Plaintiff represents that he patterned his complaint, the First Department held: "The State HRL defines status as a medical marijuana patient as a protected disability, but the City HRL does not." *Gordon v. Consol. Edison Inc.*, 190 A.D.3d 639, 640 (1st Dep't 2021).  There is no reason to think the New York Court of Appeals would disagree, since the text of the City's definition of disability cannot reasonably be construed to include being a certified medical marijuana patient.  "The term 'disability' means any physical, medical, mental or psychological impairment, or a history of such impairment."  N.Y.C. Admin. Code § 8-102(16)(a).  As the Appellate Division explained, "certification as a medical marijuana patient is . . . a legal classification.  It is not a 'physical, medical, mental, or psychological impairment.'" *Gordon*, 190 A.D.3d at 640 (quoting N.Y.C. Admin. Code § 8-102).

It is beyond dispute that the New York City Human Rights Law does not recognize marijuana use as a protected disability. As noted, the text of the City Code does not define disability to include being a certified medical marijuana patient. Indeed, the City's definition of disability expressly provides: "In the case of alcoholism, drug addiction, or other substance abuse, the term 'disability' . . . *does not include an individual who is currently engaging in the illegal use of drugs when the [employer] acts on the basis of such use*." N.Y.C. Admin. Code § 8-102(16)(a) (emphasis added). Marijuana remains an illegal controlled substance under federal law. *See* 21 CFR § 1308.12. Thus, the City law does not provide a remedy when an employer declines to hire an individual who is engaging in marijuana use.

In the face of controlling authority that being a certified medical marijuana patient is not, itself, a disability under the NYCHRL, Scholl contends that the City law still required Defendants to hire Scholl and allow him to use marijuana as an accommodation "to treat his underlying medical condition," chronic back pain. Pl. Opp. at 1–2, 4–7. Defendants respond that Scholl's complaint clearly alleges that "his status as a certified medical marijuana patient," not back pain, "is the basis for his being 'disabled' in this action." Def. 56.1 ¶ 15; *see* Pl. 56.1 ¶ 15 ("Admit."); Def. Mem. at 6, 11 ("Plaintiff repeats that [being a certified medical marijuana patient] is the basis of his disability at least ten times in his pleading"). Defendants further assert that there is no admissible evidence in the record that Scholl informed Defendants that he suffered from back pain, let alone was disabled on that basis. Def. Mem. at 10–11 (citing *Vitti v. Macy's Inc.*, 758 F. App'x 153, 157 (2d Cir. 2018) (employer who acts without knowledge of a disability cannot be said to have discriminated on the basis of that disability)).

The Court has carefully reviewed the complaint, all of the submissions in connection with the motion for summary judgment, and the parties' representations on the record at oral argument.

4

Scholl clearly made a strategic decision to prosecute this case, from its inception, on the theory that being a certified medical marijuana user is, itself, a protected disability. The complaint repeatedly defines Scholl's disability as "being a certified medical marijuana patient." Cmpl. ¶ 34; *see id.* ¶¶ 1, 29 ("Defendants suddenly rescinded Plaintiff's job offer and denied him employment solely due to his disability (certified medical marijuana patient)"), 30 ("Defendants penalized Plaintiff . . . because of his certified use of medical marijuana"), 33, 35, 36 ("Defendants discriminated against, failed to accommodate, and refused to hire, Plaintiff solely due to his disability (certified medical marijuana patient)"), 37 ("But for the fact that Plaintiff was disabled (certified medical marijuana patient), Defendants would not have terminated his employment"), 44, 47 ("Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(1)(a) by discriminating against Plaintiff because of his disability, denying him employment, and refusing to provide Plaintiff with a reasonable accommodation for his disability (certified medical marijuana patient)"), 51.

The complaint makes two passing mentions of back pain. First, immediately after alleging that Scholl was "denied employment due to his disability (certified medical marijuana patient)," the complaint adds that Scholl "was denied a reasonable accommodation for his disability (denied employment because he was utilizing medical marijuana to treat his chronic back pain)." Cmpl. ¶ 1 (emphases omitted). The complaint later mentions that Scholl became a certified medical marijuana patient because of a "back injury he suffered when he was younger." Cmpl. ¶ 16. But Scholl makes clear that, in the claim at issue on summary judgment, that the disability Defendants allegedly failed to accommodate is Scholl being a "certified medical marijuana patient." Cmpl. ¶ 47. The complaint specifically alleges that Defendants engaged in unlawful discrimination under

the New York City law by "refusing to provide Plaintiff with a reasonable accommodation for *his disability (certified medical marijuana patient)*"). Cmpl. ¶ 47 (emphasis added).

The complaint never alleges that Defendants denied Scholl employment because of his back pain or that Defendants even knew Scholl had back pain. On the contrary, the complaint repeatedly alleges that Defendants refused to employ Scholl "solely" because he was a "certified medical marijuana patient." Cmpl. ¶ 29; *accord*, *e.g.*, 30 ("Defendants penalized Plaintiff . . . because of his certified use of medical marijuana."). Similarly, Scholl specifically alleges that he "informed" Defendants that he "was a certified medical marijuana patient," but he never alleges that he informed Defendants that he suffered from back pain. Cmpl. ¶ 22.

At oral argument, Plaintiff's counsel conceded that he patterned the complaint in this case after the complaint in *Gordon*, in which the plaintiff unsuccessfully argued that being a certified medical marijuana patient is a disability under the NYCHRL.[2] Tr. at 25:20-21. That is clearly the theory of the complaint in this case. Furthermore, as became clear at oral argument, Plaintiff's counsel relied on the theory that Scholl's disability was only his certification as a medical marijuana patient throughout the discovery period in this case. Specifically, when Defendants first requested medical records, seeking "all documents concerning any disability," Plaintiff's counsel produced only Scholl's medical marijuana certification and otherwise objected that the request sought "irrelevant information." Tr. at 12:23-24, 13:4-6. In other words, Plaintiff's counsel, from the outset, took the position that the only relevant document concerning any disability in this case was Scholl's medical marijuana certificate. Later, when Defendants asked Plaintiff to complete a

---

[2] In *Gordon*, the court denied a motion for summary judgment because there were "issues of fact" whether the defendant "fulfilled its duty to engage in an interactive dialogue with plaintiff aimed at reaching a reasonable accommodation" for the plaintiff's irritable bowel disease. 190 A.D.3d at 641. Scholl argues this Court should rule the same way, based on Scholl's asserted back pain. But *Gordon* was different because the plaintiff in that case informed the defendant that she suffered from irritable bowel disease. 190 A.D.3d at 640.

HIPAA authorization, so Defendants could access whatever medical records Scholl had submitted to obtain his medical marijuana certificate, Plaintiff's counsel responded: "Such a request seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." Tr. at14:16-19. Again, Plaintiff's counsel strategically chose to litigate this case on the theory that Scholl's disability was only his medical marijuana certification, and not any underlying condition. *See* Tr. at 13:4-10, 14:12-19, 46:12-16. Scholl could have sought leave to amend after the ruling in *Gordon*, and produced discovery about his asserted childhood back injury, but he chose not to change his strategy.

Instead, Scholl insists that this Court should rule that the NYCHRL applies to Scholl merely because "by the very nature of having a medical marijuana certificate, a person must suffer from an underlying medical condition." Pl. Opp. at 7. Such a ruling would vitiate the logic of *Gordon* that the "City HRL does not" recognize such certification, by itself, "as a protected disability." *Gordon*, 190 A.D.3d at 640. This Court is bound by *Gordon*. *See Pahuta*, 170 F.3d at 134. Scholl failed to allege that he suffered from, and that Defendants knew of, a disability other than his "certified use of medical marijuana." Cmpl. ¶ 30. Thus, there is no genuine issue as to any material fact, and Defendants are entitled to a judgment as a matter of law on Scholl's claim under the New York City Human Rights Law.

## IV.   CONCLUSION

For the reasons set forth above, the motion for partial summary judgment [ECF No. 58] is GRANTED. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 58. This case must now proceed to trial on Scholl's claim under the NYSHRL. Accordingly, IT IS HEREBY ORDERED that the parties shall submit pre-trial filings, in accordance with the Court's Individual Rules, by September 27, 2022. The Court will set a date for trial in a separate

order.  IT IS FURTHER ORDERED that, by July 20, 2022, the parties shall file a joint letter informing the Court whether they wish to return to mediation with the SDNY mediator, or to be referred to the Magistrate Judge for a settlement conference.

**SO ORDERED.**

**Date:  July 13, 2022**
      **New York, NY**

            _____
            **MARY KAY VYSKOCIL**
            **United States District Judge**